Judge Higginbotham and Judge Graves, can you hear me? Yes, sir. We can hear you. When is the Wal-Mart case scheduled? It should be next. It should be right now. Right now? Yes, sir. Okay. We'll call that case for oral argument. Rudolph O'Connor v. Wal-Mart Stores, LLC. We'll hear first from Mr. Simpson and then Mr. Hoffman. May it please the Court. My name is Ian Simpson. I represent Rudolph O'Connor. This case is defined by and decided by the standard of review. The trial court granted summary judgment in this matter, and it's a simple premises defect case. Texas law provides a couple of different theories for premises liability. There is negligent activity and there is premises defect. The trial court addressed both of these in its order. I will concede that there is nothing to support a cause of action for negligent activity in this case. That requires a contemporaneous injury, contemporaneous to the defendant's activity. It doesn't exist here. And the trial court properly held that the summary judgment was available for that. Where the trial court made a mistake was on the premises defect, and that's what we bring to this Court. A quick diversion into the facts. Mr. O'Connor was at the Wal-Mart Supercenter in Lamarck, Texas. It was almost three years ago to the day. He was walking outside past the garden center, and as he walked past on a sidewalk, he slipped and fell. It was a puddle of retained water that hadn't drained off. Mud or algae? I beg your pardon? It comes down to mud or algae. That's exactly what it comes down to, Your Honor. And, in fact, it's not even just mud or algae. It's how did the mud get there? The question is, is it a natural or an unnatural occurrence? And why does that make a difference? Well, it's longstanding Texas Supreme Court precedent that nature is not unreasonably dangerous. Nature may be dangerous, but it's not unreasonably so. And it deals a great deal with expectation. What is a claimant or a guest on land going to expect to see? Mr. O'Connor was a business invitee. He was a customer of Wal-Mart. And so Wal-Mart had a duty either to warn or to make the premises reasonably safe. It could do either one of those. It didn't do either. That was the problem with it. Whether or not something is unreasonably dangerous is generally going to be a fact question. It's got to be something that's decided by the jury. And that's why I go back to the notion of the standard of review is what decides this case. Texas case law says that a slippery walkway caused by algae growth can be an unreasonably dangerous condition. The question is, was it one here? And that's something that a jury needs to decide. Again, why is this natural or man-made distinction important? It's because a landowner is not a guarantor of the safety of everyone who uses his land. There are usual versus unusual dangers. In State v. Shoemake, the Texas Supreme Court said that it could be a sheer cliff. It could be a rushing river. It could be a concealed rattlesnake. Of course, that was decided based upon Texas park grounds and the recreational use statute, which doesn't apply in this case. It's got a lot more going that's involved in it. But a natural condition is within the understanding and expectation of anyone. Dirt in its natural condition is just that, it's dirt. The thing that is the aggravating factor, so to speak, is the assistance or involvement of unnatural contact. That's what makes it unusual. Unnatural in this context means man-made. It means artificial. Now, Walmart and the trial court took the position that because this was a natural growth of algae, it could only be natural. But that's not the case. Because, in fact, what the record shows is that the jury could find that Walmart put the water there. The water that allowed the algae to grow. This is right outside of Walmart's garden center. Their own store manager, Mr. Jesse Hale, testified that water from the garden center drains onto the sidewalk, right where Mr. O'Connor was walking. He said the plants get watered in the garden center and the drainage goes out there. It washes dirt, it washes soil, and, of course, it washes water. Dr. Rasti, who is an expert witness, also testified that there was a lip of the parking lot that ran right alongside that sidewalk. And it caused pooling. It just stopped it from draining. He testified that he would expect that runoff to include greater than normal accumulations of soil and dirt just because it's all coming from the garden center. And that pooled water creates the conditions for algae growth. That raised area is all... I want to make sure, so I'm going to ask you to help me. Specifically, what fact issue is disputed that would allow that you survive a summary judgment motion? The trial court held that this was a natural condition. That it was all natural and, therefore, it was not an unreasonably dangerous... Okay, well, let me ask it a different way. Algae, I guess, is a natural condition. It grows in nature. It does. And so... But it grew here, apparently, in water, which Walmart put there, according to you, or allowed to remain there. So the only question is whether or not this... The water being there is man-made versus natural. We're not arguing about whether algae is natural or not. That's correct, Your Honor. Yes. All right. So the only question is whether or not Walmart allowed the water to remain where the algae grew. That's correct. And Walmart created those conditions through both the premises itself, the parking area, and its activity of watering in the garden center and allowing that runoff to flow into the area. And so in order to find that summary judgment was appropriate, the trial court found what with regard to the watering the algae? The trial court simply found that O'Connor presented no evidence at all that this was anything but natural. All right. And that's what we take issue with, Your Honor. I want to deal a little bit with Walmart's knowledge of the hazard, because what frequently comes up in premises defect cases is, did they know about it? This is something that Walmart attacked in the trial court on its motion for summary judgment. It's not something that the trial court relied upon, but the trial court could well have had it chosen to. Under Texas law, a landowner is not permitted to – has no knowledge of a condition that it itself created. And again, there is this testimony from Mr. Hale, the store manager, that water flows down from the garden center, drains onto the sidewalk, pools there. Dr. Rasky, again, the expert witness, testified that that's what creates the conditions for algae growth, that allows it to grow, and that the coefficient of friction for algae is substantially worse than the coefficient for even wet concrete. So with that exacerbating factor, that creates an unreasonably dangerous condition, and Walmart helped to create that. And therefore, it can't just claim that it doesn't know about it. Another factor based on Keech v. Kroger that shows – that allows a fact finder to infer knowledge of a dangerous condition is the persistence of that factor, the persistence of that condition. Dr. Rasky gave testimony that he observed several locations along the sidewalk where it appeared to be stained from past algae growth. And he had photographic support of that. That's in the record at pages 311 to 312. Funnily enough, there was also retained water at the time he inspected it. That was nearly two years after the fact, but even after the fact, that allows the inference that it was there before, that the conditions were there previously. It's rebuttable, but again, we're talking about summary judgment. That standard of review defines everything. Finally, if an occupier of land fails to make reasonable inspection and find a premises defect that otherwise would be found, and because Mr. O'Connor was a business invitee, Walmart owed him that duty to make reasonable inspection. Mr. Hale testified that he does inspect the property. The way that he does it is he drives around it in his car. And mostly he's looking at the back area where they load and unload the trucks. He's not looking at the sidewalk around the front. In fact, he said that because he doesn't actually get out of his car to do that, then he probably would never even have seen this. He also said that nobody inspects this area on a regular basis. Walmart conducts regular inspections inside the store, but nobody walks the outside to inspect it. Nobody looks for potential premises hazards in the parking lot, on the sidewalk surrounding it. This allows an inference that Walmart, just plain, didn't make the appropriate inspection. The jury could find that, and once again, the standard of review answers the questions and defines what this court needs to do with it. I do not have a great deal more to present here on this. It's a very simple set of facts. I think that the court's course is very clear. I'm happy to answer questions. Thank you. May it please the court. My name is Neil Hoffman. I represent Walmart. And we're asking this court to affirm the district court's decision-granting summary judgment. I agree with Mr. O'Connor. The facts in this case are straightforward. But they're not nearly as strong as he seems to believe that they are. In fact, there are no facts supporting Mr. O'Connor's theory. Judge Graves, you hit this point right on the head. The issue is not whether this is dirt or whether it's algae. The issue is whether this substance was created naturally or unnaturally. And natural versus unnatural is— Let me ask you a question about Texas law in that regard. I suppose that it's a freezing temperature, 15, 16 degrees out there. And the store naturally allows water to creep out across a walkway, and it freezes. How does that fit into this matrix of law here? So we actually have an answer for that under Texas law. The Scott and White v. Fair case has held that ice, ice that forms through the weather, even if it's freezing over water that is—someone drops a cup, there's water that's leaking out. That is a naturally occurring condition. Even though you naturally created the condition? Yes, Your Honor. If the water is—let's say, for example, we had— In Texas, it turns on not what the defendant did to create it. Algae obviously is a natural phenomenon, but it don't exist only because you've allegedly messed up in allowing it to be—you created it, and you allowed it to be there. And you say under Texas law, because the dangerous condition, it naturally occurs from negligent conduct that there's no liability. Is that the Texas law? It depends. In the context of ice, it's a little different. For the algae, if there was factual evidence— Well, Texas cuts along the lines of what— Okay, I got to get that. In the context of algae, the answer is more in line with what you're saying. If the evidence is that the water is unnaturally creating the algae, that could be unreasonably dangerous. We don't have any evidence of that in this case. So Mr. O'Connor's argument, his sole contention, was that there was watering occurring in the store's garden center. That water drained from the garden center and resulted— So you're saying that the fact question, because you didn't create the condition, there's nothing to show that they created the condition that caused the algae? That's correct. There is no evidence showing that water was actually draining to this point of the sidewalk. Okay, but let me—so then, is this assumed, arguendo, that they had created some condition that caused the algae to be there? Then you would have a jury question? If there was evidence for that point, yes, you're right. But here, we don't have evidence. I understand you contend to the contrary, but I'm just trying to understand the slippery law of Texas. If there was evidence showing that the water was forming in this area and causing the algae growth due to unnatural activity, there is a fact question. We don't have that here. What we do have is evidence that it was raining right before, and again, we have no evidence there was not rain in the previous period before that would cause algae to grow. What we have is a contention that there was watering taking place in the garden center, that this caused water to run off and drain onto the sidewalk and create algae growth. But what you won't find in the record is any evidence that water was draining to this point of the property from the garden center. That is, no witness said, I've seen water from watering in the garden center draining to this point. But how does algae naturally grow without water? Because it's exposed to the elements, Your Honor. It gets rain. But you said it wasn't raining. It was raining at the time of the incident, and there is rain that hits this point. This incident occurred shortly after. Well, it got some rain. I don't get it, not my way. Mr. O'Connor actually stepped into a very large puddle of water, which if we didn't have the dangerousness component would raise issues about open and obvious on its own. We just don't get to that point because under Texas law, the condition isn't dangerous to begin with. So in this instance, Mr. O'Connor didn't present any evidence that the theory he concocted, watering, unnatural activity is pooling here, draining there, and creating this, actually happened. If you look at the factual record, there is no witness who says not only is it watering, but the water then pools and drains at this point of the garden center because the garden center is a massive area of the store. It takes up the entire left side of the building. There's numerous points where water can drain. So Mr. O'Connor could have, for example, presented a witness who said, I've seen watering in the garden center. It drains at this point and pools there. That's what the plaintiff— Isn't that what Hale said? Didn't he say that water drains onto the sidewalk? No, that's actually not what he says. What he says is it is expected that watering will come out and cause this issue. Dr. Rasti did not do any firsthand observation, testing, or talk to a single person who says that's actually what occurs here. If you look at the record, Dr. Rasti essentially comes out to the store a year and a half after the fact. So what I see in the record is—let me put my glasses on. 199-203-206, water from the garden center drains out of the garden center onto the sidewalk. That's not in the record. That water drains to the sidewalk first is different than water drains to this spot. Well, would you listen to my question? My question right now is, is that in the record the way I just read it? No, Your Honor. What Dr. Rasti says is it is expected that— I'm talking about Hale, Jesse Hale. In which case? The manager of the Walmart store in question, Jesse Hale, that he was aware. He says he's aware that water drains to the parking lot. He doesn't give a specific location of where it's draining. Because this is, like I said, a giant area. This is not just a singular spot. If this was, for example, a store that had a single drainage point, then that's an inferential point we could say. We could infer from drainage that it has to drain over that spot. But we've got an enormous area where there is drainage point, and Mr. O'Connor hasn't presented any evidence, for example, that there's plant watering along that portion of the fence, as opposed to anywhere else inside the garden center, that the water then drains on the floor, pools down to that point, because this is a specific point on the sidewalk. It's not the entire sidewalk is the danger. Is there any evidence where the algae was located in other places? Dr. Rasti said about a year and a half after the fact he came out and saw green spots on sidewalks at other areas, but that's a year and a half after. We have nothing from the time of the incident of algae anywhere else. But frankly, from this point, the condition is simply what Mr. O'Connor slipped on, that causal link. So, for example, what he could have done is he could have pointed out this is the only point where it could drain. He could have had Dr. Rasti perform testing. That is, Dr. Rasti could have gone in and seen how the watering functioned and where it drained, and then he could say, well, it drains here. It's expected it drained there at the time of the incident. He didn't do that. He simply went out, saw the point where the incident happened, and said, well, it's expected this happened. That's not confident evidence. That's just a guess. Dr. Rasti didn't talk to anyone who said water actually drained to this point, because, again, it's an enormous area. And even Mr. O'Connor's arguments are presented as conditional hypotheticals. If this, then possibly this, then maybe this. And that's not confident summary judgment evidence. It's a guess. It's an equally possible inference out of any other number of inferences of where this water could have drained to, and it would have been very easy for Mr. O'Connor to at least do an investigatory search to find something. The reason I ask is, if the algae is elsewhere, it would suggest that elsewhere, away from the garden, the other side of the parking lot, whatever, if you had evidence of that, then that would be algae occurring as a natural cause, whatever, a product of that. But if you don't have it out there, but you have it only in this place, and it's approximate to the garden center, why isn't that enough? It's not enough because of how the standards shift. In Texas, the summary judgment standard for naturally occurring conditions is a two-part standard. On the initial court, the defendant has the burden to show a natural condition. Even Mr. O'Connor here today doesn't dispute that algae is natural. With that having been met, and with there being no dispute that that's satisfied, the burden shifts to Mr. O'Connor to offer competent evidence that this was unnaturally created. Mr. O'Connor could have presented evidence in the record that there's no other algae growth anywhere, but it's not Wal-Mart's burden. Correct. Wal-Mart only has to show it's a natural condition, which everyone agrees it was. Mr. O'Connor then has the burden to show it's unnaturally created. So again, we think of the way these sorts of things function. Rainwater, natural. Water trapped into a store, unnatural. That's the sort of distinction we have on how this doctrine applies. Additionally, Mr. O'Connor kind of made the point that first, this is often a fact question. Well, respectfully, I think Texas opinions show that's not the case. There are innumerable instances where courts have found that natural conditions are not to go before a jury, even if the plaintiff says, oh, I just wish, I think it might not be, here's a way in which it possibly could have happened. That's not the way this works. Because Wal-Mart met its fact burden, Mr. O'Connor had to present competent evidence, not guesses, not an expert saying it's expected this might possibly happen. He has to show facts on which those sorts of inferences can be drawn, and he could have done that in any number of ways, but he didn't. He just paid someone to say, this is a possibility, and similarly, he suggested that unnatural means man-made. And that's, again, not quite correct because any of these sorts of things happen on man-made surfaces. That's not what the issue is. It's not whether something happens on concrete versus dirt or things of that nature. It's whether the substance was actually created by direct unnatural means, that is, non-natural events or context, like tracking in the water or ice from an ice machine rather than the temperature, things of that nature. The other kind of component of this, notice, is irrelevant as well. It doesn't matter whether Wal-Mart knew or should have known about algae. What about the testimony of Mr. Hale, the manager? He said that he understood the water from the garden center drains out of the garden center onto the sidewalk. The sidewalk runs all along the store. Where O'Connor fell, down into the drainage area, into the parking lot. The sidewalk where O'Connor fell runs along there. I believe Mr. Hale testified it just runs out over the sidewalk, but the sidewalk is an enormous area along the garden center. It's the entire left side of the building. Well, just to clarify, because now I'm looking at the record. Yes, sir. So all of this is actually just a form of question, run by Mr. Todd, where he says, sir, as a manager of that store, you understand that the water from the garden center drains out of the garden center onto the sidewalk, down into the drainage area, into the parking lot. Yes, Ray. That's correct. The response was correct. Yes. Again, the parking lot, the sidewalk in that area is an enormous area. Mr. O'Connor can't prove it happens at point A and say that creates an unnatural condition at point B where I fell. He has to show the unnatural. Isn't the total sidewalk on Wal-Mart's premises legally? I'm sorry. Would you mind repeating the question, Judge Dennis? I heard part of that. I said, isn't the sidewalk, wherever it goes, part of Wal-Mart's premises? Yes, of course, Your Honor. My point is simply that just because the street says water… Pedestrians that shop at their store. It doesn't matter where the algae occurs on the sidewalk. It's still on Wal-Mart's store. It's still their premises. It is still their premises, Your Honor. The point, though, is if Mr. O'Connor is trying to claim that this point of algae was unnaturally created, he has to link it to the unnatural activity occurring as opposed to the natural elements. Wal-Mart doesn't have the obligation to keep its sidewalks safe? They do from unnatural conditions, Your Honor. But as a matter of Texas law, the Texas Supreme Court has held that naturally occurring conditions are not unreasonably dangerous. Even a banana peel, which is natural, would not be their responsibility if it was out on the sidewalk? I'm sorry, what substance, Your Honor? A banana peel. A banana peel, again, that wouldn't have been created naturally. Bananas just don't grow on the sidewalk. Someone would have dropped it, so it would have been created through unnatural contact. That's an example of someone tracking in rainwater. Rainwater is natural, but if someone walks it into the store, that's an unnatural contact, and Wal-Mart can be responsible. But algae that just grows naturally is a natural condition. If Mr. O'Connor wants to take the position that it is unnaturally created, he has to have actual evidence showing that that specific algae, the algae he fell on, was created through unnatural contact. Just having a store manager say water drains at some point from the garden center, which is a massive area, onto the sidewalk, which covers the entire length of the garden center outside, into the parking lot, which is enormous, isn't a link from point A to point B, for example. It could be anywhere. Mr. O'Connor has to directly link the unnatural activity he wants to argue created the condition to the point at which he fell, and we know that because we have innumerable examples. Even one of the cases he cited, the Pearson case, which again was under Mississippi law, but it demonstrates the principle. In Pearson, the plaintiff was at a Sam's Club store in Mississippi and slipped on a pool of algae on the sidewalk, and the plaintiff's theory was that this algae was created because the Sam's Club had a drain that allowed water to drain over the sidewalk onto that point. So what did the plaintiff do? The plaintiff hired an expert who went out to the store. The expert went onto the roof, found a standing pool of algae-filled water right next to the drain. The expert then got some water and dumped it down the drain and observed greenish water coming out the other end, landing on the sidewalk, traveling along a green-stained trail to the exact spot the plaintiff fell. The expert can then say, I tested this theory, and this is true. This works. The expert also spoke to someone who said, I've seen this happen, water draining, trailing algae there, and people falling on it. That's the type of evidence Mr. O'Connor could have gathered for this sort of case. Even something as simple as seeing the water running in the garden center, seeing where it drained to, would have allowed him to say this unnatural activity could create the algae at issue. He didn't do any of that. He simply looked on the sidewalk on a dry, sunny day a year and a half later and said, it's expected that pooling could happen. That's not enough to create a fact issue of unnatural activity. Does the record show that this is the only place there's algae? Is there algae all around that? I mean, to break the chain of causation from the defendant's conduct, you could look to evidence that, it seems to me, that there's other parts of the driveways or the walkways or elsewhere, away from the garden area, that simply don't have that condition. The fact of the matter, Your Honor, is we don't know one way or the other. Because Dr. Rasti came out and said that. What does the evidence show about the other place? And you say it doesn't show. Well, Dr. Rasti, when he came out down the road, says he saw this in other areas. But he didn't walk the entire property to see where all algae was. And again, that would seem to be presupposing it's Walmart's burden to negate the existence of algae anywhere else. And that's not the case under Texas law. It's Mr. O'Connor's burden to show that this was unnaturally created through a sequence of events that shows unnatural content. Walmart only has to show that algae is natural, which everyone agrees it was. So suggesting that Walmart then has to know what Mr. O'Connor's theory is going to be and then show every other instance in which this develops, I think kind of flips Texas law on its head. I'm not going to the burden of proof. I'm just going to the question of what's in the record in terms of evidence. Now, whatever effect that may have and whatever burden it meets or doesn't meet is not my question. It's just a question of what exists elsewhere. All we know is that there is other instances of algae standing on the property. But as to all of them and where they are, we don't know. And frankly, Walmart's position is that's not its obligation to do. It would seem to be problematic to make it have to do that at this stage. In the context of this sort of thing, Mr. O'Connor has to present that competent evidence of how this was created, which he simply didn't do. Simply hiring a person to say it's expected this might have happened isn't enough. It's simply not competent evidence. We similarly would, you know, if we disregard the issue of algae, the issue of notice then comes back into play because the only notice evidence we had was based upon it being algae. If it's not algae, there's no notice evidence whatsoever. And similarly, we'd ask this court to affirm summary judgment as to the exemplary damages claims. There's simply no evidence of intent by Walmart to cause injury. There's no actual subjective awareness evidence of this thing to cause exemplary damages for gross negligence. So we ask your honors to affirm the district court's decision in granting summary judgment. And thank you for your time. May it please the court. Just a few points of rebuttal. I note, first of all, that at least a couple of Texas cases do in fact say that algae growth can be an unreasonably dangerous hazard. There's Blankenship v. County of Galveston. Slippery algae growth on the stairs of the Galveston seawall were a premises defect. They were not a special defect under the Community Claims Act, but they were a premises defect. Struck v. New York Bridge, a realty company. Again, evidence that slippery algae grew in a puddle with poor drainage created a fact issue on whether the condition was unreasonably dangerous. What we have here is Mr. Hale saying that water drained onto the sidewalk. Walmart is taking the position that nobody's saying that Walmart drained, that there was algae forming right where Mr. O'Connor slipped. Mr. Simpson, the cases you cited, are they in your brief? Yes, Your Honor, they are. They're actually on page 12. Mr. O'Connor himself testified that he slipped in a green slimy substance and that there was cooled water right there. Again, we're talking about summary judgment. We're talking about the jury being able to infer, and that goes back to the standard of review again. Walmart is attempting to hold Mr. O'Connor to a trial burden here. That's not what we're dealing with. He doesn't have to prove things at this point. He has to create a fact question, and the evidence does that. Incidentally, Dr. Rasti, also going back to history just for a moment, Walmart has mentioned, well, it rains that morning. Dr. Rasti testified that it takes days, weeks, maybe even months for a substantial amount of algae to form, something that someone would slip on. Contrary to Walmart's contention that Dr. Rasti went out there on a nice dry day when everything was good and the conditions were perfect, Dr. Rasti actually testified that there was water right there pooled on the day he inspected. So the conditions were very, very similar to the conditions on the day that Mr. O'Connor slipped. And I'd like to close just with one final notion, and I mention this in particular having seen Judge Hayden, because I heard him speak on this subject previously. Trials matter. Juries matter. They matter for fairness, and they matter for the appearance of fairness. For that reason, because this is about creating a fact question, we ask that the Court reverse the trial court's order and remand this case for proceedings, including trial. I thank the Court for that. Well, I have to say, it's sort of an oddity in this world that we have two of our very best advocates on a day of very complicated cases arguing a slip and fall case. We could have used you earlier. I felt sort of like we were bringing the boring case to you today, Judge. Well, thank you. I appreciate it. Thank you. Thank you. I think we're through, Jim. That concludes our oral arguments for the day, I think. And so this panel will recess until 9 o'clock tomorrow morning. Thank you.